Doesn't the podium, the podium will go down. Okay. Okay. The court will call appeal 23-1165, Luzmaria Arroyo v. Volvo Group North America, LLC. We'll begin with oral argument, Mr. DeRose, from you. Thank you, Your Honor. Judge, as I lay getting ready for this in bed last night, I thought back to my law school days. We read all those cases, and the judges were the boss. What the judges told us to do is what we learned to do, and I tried to practice that all my life as a trial lawyer. And then when I finally was coming up to these hallowed halls, I stopped and bought an Ickle book, and it had a chapter in there by Judge Prentice Marshall, and he went on and on and on about the honor to come before the Seventh Circuit. I've never forgotten that. I only come up here once in a great while, and when Your Honors talk, I not only listen, I obey. This case is screaming at us, Judge. We had very... His Honor was wrong. Your Honors told us what they wanted us to do. I put that whole one page of your instructions to us in my reply brief. And I went on, Judge, I would tell His Honor, just keep reading what the court has said, and His Honor did a great job in that first trial. And he even said on the record, I'm trying to be fair to both sides, but I'm doing what the courts tell me. And I thought he did a great job. And, Judge, I only asked the jury for a million dollars, and when they listened to what Your Honors said, they could listen to all those emails, they came back and said, DeRose, you're wrong again. She gets $7.8 million. I went away. I was shocked. But the more you think about it, Judge, as you have told us so many times, you give us the rules, we try to follow them as best we can when we walk into that courtroom so we never have to come back again. And then what happened? The jury rules. They don't have to agree with me. Mr. DeRose, could I ask you, we've read your briefs, you seem to be asking us to reinstate that first jury verdict. There are two insurmountable legal obstacles, I believe, to doing so. One is the $300,000 cap on compensatory and punitive damages under the ADA. And the other is the bar, the USERRA, the Law Protecting Service Members' Employment Rights, does not provide for punitive damages or compensatory damages at all. So I don't see how we could possibly do what you're asking us to do. What am I missing? Judge, I do believe that when they put in a general verdict... So you're going to the waiver point? Yes, Judge. I looked at the verdict and I don't see that. I see a special verdict form that lays out different questions under the two different theories. And then we also see Congress tells us we cannot tell the jury about the damage caps, right? Yes, Your Honor. So I don't see how there's a waiver of the cap. Well, Judge, I thought that Judge... Dow? No, not... Kaney? Excuse me, Judge. Judge Easterbrook said, you know, when you sit quiet and you let this all go to the jury the way you do... And you're talking about the Powell's case? Yes. Yes, I understand the point, but I don't see how those facts match up with what happens here with a special verdict form and a statutory cap that you don't tell the jury about.  And when the jury said this case... And it was much more severe than just one of those two counts. That lady went through heck, as the Seventh Circuit told us. It goes all the way back. They said, we got a business to run. You're our only reservist. We're not going to... You know, we don't want to make exceptions for you. She changed Eunice, Judge, and ran the risk, and she suffered from having to go back for a third deployment. She did everything they asked of her, and then she's one minute late? I think the jury was so offended by that. She signs in an hour earlier every one of those days. And they go back, and by hand, they change the time cards to make her one minute late. This is the kind of thing... The Congress said, if they're not following the law, you can hit them for punitives, you can go after them. This is a case screaming at us. The panel that heard this case last time said, if we're wrong, DeRosa said, there's no other reservist in your whole company. 500,000 employees in America. And how many employees? This is one of the biggest companies in the world, Judge. And if they said if we're wrong, send us a letter. Tell us that you have others. They never sent you a letter. Why? Because that was the only employee. And they said, we're not firing her because she doesn't do her job. We're not firing her for issues of production. We're not firing her because she is disrespectful. The only thing we're firing for is not following this local attendant policy where you've got to be ready to start when the bell rings. Judge, I walked in here, rolled in here way late today, and I'm sorry traffic was what it was. All of us go through times in our life when we're one to three to five to ten minutes late. You've got to be human. That jury knew that. Thank you, Mr. DeRosa. Would you like to reserve the remainder of your time for your rebuttal argument? Yes, may I please, Judge? Yes, very good. Let me just get this out. No problem. Thank you. Thank you. Mr. McMahon will now move to you for argument on behalf of the appellee. Thank you, Your Honors. Good morning, and may it please the court. My name is Bill McMahon, and I represent Volvo in this case. Judge Hamilton, I actually want to address your point first regarding the Powell's case. Your Honor is absolutely correct. That has no applicability. The jury verdict was in regards to compensatory damages under the ADA discrimination claim and punitive damages under the ADA discrimination claim. So Judge Dow found that a whole new trial was required primarily on the theory that the verdict was driven by passion. Why is it at least equally likely that this jury was simply deeply offended by the expressions of disrespect by your client's management for the plaintiff's military service and sacrifices she had made for this country? Your Honor, I'm going to answer that directly. It's because in this particular case, the adverse employment action being challenged was the termination of Ms. Arroyo's employment, not the conduct that may have occurred to her during her employment. You think the jury was required clearly by the instructions to separate that out in deciding about the motives? I mean, that's asking a jury to draw lines that maybe judges can draw, but folks unburdened by legal education might not. Well, Your Honor, what they were required to do, if they were going to award damages on the ADA claim, is they were required to award damages stemming from the termination decision. And what happened in this particular case is the plaintiff took about a week to put on their case in chief. And on Friday, we go into the judge conference. I'm aware of your theory. Right. And I know about the offer to put on more evidence to support compensatory damages. I would think this would also have easily supported punitive damages on these facts if there is liability under the ADA. I know that's a separate issue. Correct. But if you have liability, given all of these disrespectful, mocking emails about this woman's service for this country, I can easily see a jury being deeply offended and saying, yeah, punitive damages are appropriate for this. Your Honor, given the evidence that was before the jury and the amount that was awarded in regard to the amount, especially that was requested in closing argument. Well, we'll talk about that in a moment, but go ahead. Right. Yeah. Your Honor, that was kind of there. That was one of the points that Judge Dow emphasized was it's disproportional. Right. And if there's a million dollars requested in closing argument and the jury comes back on the ADA claim with 7.8 million total, Your Honor, that is very strong evidence of passion or prejudice. Or maybe the plaintiff just didn't ask for enough. Well. I mean, we don't tell the jury. We give them no guidance, right, as to what those numbers ought to be. That's correct. We don't tell them about the statutory cap. People in and off the street have read newspaper articles about big jury verdicts before. Who knows where that number comes from. But there's certainly plenty of offensive behavior by Volvo Management in this case. There may be offensive behavior and the jury may think the behavior is offensive, but ultimately they have to tie the behavior back to the adverse employment action being challenged. And that is the termination of employment. How clear do you think that was in the instructions to the jury? Your Honor, we do think it was clear in the instructions. Where? And, well, Your Honor, what I was going to say in regards to the instructions is, well, first of all, in the verdict form itself, Your Honor, but also on a related point to that, Ms. Arroyo did have a separate claim at one point in time for intentional infliction of emotional distress based on the interim conduct that occurred to her. Right. So it was based on the comments and she made a very specific articulation of that in her amended complaint. I believe it was the third amended complaint where she challenged those events that happened during her employment. Well, that claim was actually dismissed on summary judgment and that claim was affirmed by the First Seventh Circuit panel. Right. Right. So all that was left for the decision at the time of the trial was the termination decision. Yeah, but I'm looking at the damages instruction. And I don't see that, you know, a clear instruction that says don't look at how she was treated during her employment. It just says consider physical, mental, and emotional pain and suffering she's experienced. Right. Right, but of course. No evidence of the dollar value, et cetera, has been or needs to be introduced. Right. I understand, Your Honor. And, Your Honor, those instructions came from the Seventh Circuit. Oh, I know. But the question is, is the validity of the reasoning that these big numbers are evidence of a jury wildly out of control as opposed to just appropriately offended by an employer's violations of the law as the jury was permitted to find? Well, I think it was. I think there's two factors here. I think there's the conduct by the defendant, which clearly the panel said, this court's previous panel said, that's coming into evidence that can be considered. But then there's the effect on Ms. Arroyo. Right. And it was the effect on Ms. Arroyo where there was not any evidence. But even if there were, another factor that Judge Dow relied on is saying, you know, the amount awarded here is completely out of proportion to other cases in this circuit where emotional distress damages has been admitted and proof has been shown. And that's the kind of reasoning that would allow a judge to impose a remitter, right? Well. And we've got a statutory cap here anyway. But I'm really struggling with the idea that 2.6 million in compensatories. Yes. Shows a jury wildly out of control. I mean, Congress obviously wouldn't have been too shocked by this number. That's why they put the statutory caps in, right? Well, the statutory caps are in place based on Congress's determination, Your Honor. But even, even to get to a statutory cap number, there still has to be evidence of emotional distress suffered by Ms. Arroyo. They did not even ask her a question at trial. How did this affect your life being terminated by Baldo? They didn't even ask that question. They could have asked that question. They didn't. They didn't put on any sort of medical evidence of impact on her. They didn't put on any sort of evidence of family members' testimony on how her life's been changed. That is the sort of evidence that the courts look at and validate when there is an award of emotional distress damages. So, Your Honor, for those reasons, we don't think it was an abuse of discretion. And that is the standard of review here as well, is abuse of discretion. Can I go back to the discussion we were starting about the closing argument? Yes. Is it your view that a plaintiff's specifying an amount in closing argument caps the awardable damages? No, Your Honor. Of course not. It's not my view that it caps it. It is our view here that Judge Dow properly exercises discretion in saying the amount they came back with was so disproportionate to what they asked for that that is evidence of passion or prejudice. And we send a case from the Eighth Circuit, the Dossett case, which I think is kind of on point there. In Dossett, there was a request of $500,000 and there was an award of $1.5 million. And in the district court in Dossett, there was actually a sua sponte, kind of the district court bringing this up saying, look, this is completely out of proportion here. I want to talk about a new trial. And a new trial was granted at the district court suggestion. So if we're talking about a three to one ratio, and here we're talking almost about an eight to one ratio, when you talk, when you factor in the punitive damages, that was a proper exercise of discretion by Judge Dow. Do you think the district judge was required to set, to order a new trial as opposed to a remitter or just impose the cap? On these facts, absolutely, Your Honor, because if there is an irrational verdict, which is a product of passion or prejudice, the case. If there is, that's, that's, but the question is, was that a call that could have gone either way here? I think it could have. Well, it maybe could have, but Judge Dow properly exercised his discretion in finding that it did. And since he found that it did, he relied on the case all from this circuit that said remitted or would not be proper. And that in the new trial in its entirety would have to be granted. And Your Honor, that's ultimately what we get down to is the fact that the mandate from the first, from this panel was filed in the first trial. Judge Dow was dealing with the evidence that came in at that trial. And then the verdict that was returned and he properly exercised his discretion and factoring it on all of that evidence, all the testimony and ultimately granted the new trial that he did. And so for those reasons, we asked that the district court be affirmed. Thank you, Mr. McMahon. Thank you. Mr. DeRose will now go back to you for rebuttal argument. Thank you, Your Honor. I don't know. Your Honor, there's so many things you'd like to say that jury and never asked us any questions. They were never confused. They said quietly, they listened to the evidence. They weren't in passion. I wouldn't even be able to tell you what one of them look like today. I wasn't looking at them. I was looking at the evidence. And when I suggested a million, that's a suggestion. I did that with judge Grady years before that. And judge Grady, the jurors in that case said, judge, are we limited by what DeRose is asking for? And he gave them, he said, no, he's only giving you a recommendation on what he thinks. I guess I never asked for enough, but I've had it before judge. What'd they say? No, you're just out there giving them advice. This is a fact question. And this thing about the ADA, we entered a stipulation, which judge Dow would not allow in that second trial, that PTSD is a disability. This lady was going through heck in the, in the courtrooms. I mean, and what is the last word that Schroeder says when he, when he fired her, he sends the email to his boss and says, she's been a pain. She just wants ESG to always help her every time she has. That's right. And he asked me, I was mad at her. She gives them an award for being a great company was baloney judge. She was doing everything. She could say, just take care of us. She, she's an HR person and, and she knew what her rights were. And maybe that's more dangerous. If she didn't know all that she would, but she was a good worker. They were terrible. What they did to her. Mr. Duros, any final thoughts for us? Just God bless you. Do the best you can. Thank you very much, Mr. Duros. Thank you very much, Mr. McMahon. The case will be taken under advisement.